IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREW JOHANSSON, HEATHER PORTER, JON PEARCE, LINDA STANLEY and ANETRA FAISON, on behalf of themselves and the Class of Members described herein, | 4:20-CV-3069 |
| Plaintiffs, | MEMORANDUM AND ORDER |
| vs. | |
| NELNET, INC., a Nebraska Corporation, NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company, and NELNET SERVICING LLC, a Nebraska limited liability company, | |
| Defendants. | |

The plaintiffs' complaint alleges individual and class claims regarding the defendants' servicing of student loans. Filing 1. The defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the plaintiffs failed to state a claim for relief. Filing 21. For the reasons that follow, the Court will grant the defendants' motion in part, and deny the motion in part.

## I. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must provide more than labels

and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief. *Id.* at 679.

In assessing a motion to dismiss, a court must take all the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See id.* at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

A motion to dismiss under Rule 12(b)(6) tests only the sufficiency of the allegations in the complaint, not the sufficiency of the evidence alleged in support of those allegations. *Stamm v. Cty. of Cheyenne, Neb.*, 326 F. Supp. 3d 832, 847 (D. Neb. 2018); *Harrington v. Hall Cty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *4 (D. Neb. Mar. 31, 2016).

## II. BACKGROUND

The defendants are Nebraska corporations. Filing 1 at 16-19. Defendant Nelnet Servicing, LLC is a wholly owned subsidiary of defendant Nelnet Diversified Solutions LLC, which is a wholly owned subsidiary of defendant

Nelnet Inc. *Id.* The plaintiffs allege that the defendants administer, service and collect student loans throughout the United States. Additionally, according to the plaintiffs, Nelnet, Inc. owns over fifty other subsidiaries that also service and collect student loans. Filing 1 at 16. The defendants, through Nelnet Servicing, contracted with the federal Department of Education regarding the administration and collection of student loans. Filing 1-1. Further, the plaintiffs allege that defendant Nelnet, Inc, holds itself out to be a major servicer of federal student loans originating with, and owned by, the Department (Federal Direct Loan Program), as well as Federal Family Education Loan Program (FFEL) loans purchased by the Department. Filing 1 at 18.

The plaintiffs allege that the defendants, as federal loan servicers, are responsible for administering federal income-driven repayment plans. Filing 1 at 2. Borrowers who cannot afford to repay their loans pursuant to the standard repayment plan may enroll in a variety of income-driven repayment plans. Filing 1-2 at 12-17. One such plan is the income-based repayment plan, in which the borrower's monthly payment is generally capped at fifteen percent of the borrower's discretionary income. Filing 1-2 at 14. After twenty-five (or in some cases twenty) years of qualifying payments, the borrower's debt is then subject to discharge.

Income-driven repayment plans are renewed annually. Filing 1 at 4. To renew a plan, the borrower must recertify their income and family size by submitting a renewal application. The loan servicer, according to the plaintiffs, is required to notify the borrower when their annual renewal application is due. Filing 1 at 5. This notification must be in writing, and must be provided no sooner than 90 days, but no later than 60 days, prior to the borrower's renewal deadline. 34 C.F.R. § 685.221(e)(3). The notice must also inform the

3

borrower of the consequences for failing to timely renew their repayment plan. *Id*. Two such consequences are an increase in the borrower's monthly payment to the amount that would be due pursuant to a standard repayment plan, and capitalization of the unpaid interest, which involves adding the current interest due and owing to the unpaid loan balance. 34 C.F.R. § 685.221(e)(3)(ii).

Timely submission of a renewal application and proof of income entitles the borrower to certain protections. The borrower's income-driven repayment plan may not be cancelled while a renewal application is pending, and the borrower's monthly payment amount must be maintained until the renewal request has been processed. Filing 1 at 5; 34 C.F.R. § 685.221(e)(8)(i). Further, loan servicers are directed to promptly process applications and determine the borrower's new monthly payment amount. 34 C.F.R. § 685.221(e)(3).

The plaintiffs allege that if a borrower submits a timely renewal application, but the loan servicer needs additional paperwork to process the application, the borrower's account is given administrative forbearance. Filing 1 at 6. Administrative forbearance allows the loan servicer to have up to sixty days to collect and process the renewal documentation. 34 C.F.R. § 685.205(b)(9). Interest that accrues during administrative forbearance is not capitalized. *Id*. If a borrower is unable to make payments for a variety of acceptable reasons, their account may be placed in what the plaintiffs call hardship forbearance. Hardship forbearance allows for a temporary cessation of payments, or an extension of time for making payments, or the temporary acceptance of smaller payments. 34 C.F.R. § 685.205(a). Interest that accrues during hardship forbearance is capitalized to the borrower's account balance. *Id*.

Plaintiff Andrew Johansson is an Illinois resident and obtained several Federal Direct loans, which are serviced by the defendants. Filing 1 at 6. In

2017, Johansson was enrolled in an income-based repayment plan, and making monthly payments of $142.66. In September, Johansson mailed his annual recertification and tax records to the defendants prior to his recertification deadline. In November, Johansson received a billing statement from the defendants in the amount of $1,173.60, which indicated that Johansson had been switched to a Standard Repayment Plan notwithstanding his pending income-based repayment renewal application. Filing 1 at 7. Johansson resubmitted his renewal application electronically, and his resubmitted application was eventually approved. However, because Johansson could not afford a monthly payment of $1,173.60, the defendants directed him to place his loans into hardship forbearance while the defendants processed his resubmitted application. Johansson alleges that hardship forbearance is not authorized while an income-driven repayment application is pending. Further, because the defendants directed him to hardship forbearance, his loans accrued interest in the amount of $26,194.27, which has been capitalized to his account balance. Filing 1 at 8.

Plaintiff Heather Porter is a citizen of Missouri. In 2013, she consolidated her various student loans into a single Federal Direct loan. Porter's consolidated loan is serviced by the defendants. Filing 1 at 8. On December 10, 2018, Porter received an email notifying her that her income-driven repayment plan would expire unless she renewed her plan by January 29, 2019. On December 14, Porter submitted her renewal application and proof of income to the defendants electronically, and received confirmation from the defendants that same day that her application had been received and would be reviewed shortly. Filing 1 at 8. However, on January 9, 2019, Porter received written notice from the defendants advising her that this was her final reminder to recertify her income-driven repayment plan or her monthly

payment would increase to $1,174.47. The next day, Porter faxed a copy of her previously submitted application and proof of income to the defendants. Filing 1 at 9. On March 21, the defendants sent Porter a demand for $1,174.47, and required that her payment was to be made the next day. Porter emailed her proof of income to the defendants yet again, but when she informed the defendants that she could not afford to make the demanded payment, her loan was placed into hardship forbearance where she accrued interest that has since been capitalized to her account balance.

Plaintiff Jon Pearce is a resident of Texas, and has received various Federal Direct loans for his educational expenses. Filing 1 at 9. Pearce's loans are serviced by the defendants. In November 2016, Pearce submitted an income-driven repayment application to the defendants electronically. Pursuant to the defendants' instruction, he used a self-certified letter to document his income. Pearce's letter was modeled on an exemplar letter provided by the defendants. Filing 1 at 10. In December, the defendants denied Pearce's application because Pearce's income certification letter did not specify that his income was his gross income. Pearce alleges that the instructions he received regarding preparation of a self-certifying letter did not require the use of the word "gross" when proving income. Pearce alleges that over the next two months, he diligently made attempts to enroll in an income-driven repayment plan, but on multiple occasions, he received notices from the defendants that his applications could not be processed without more information. Pearce alleges that each of his several applications were complete, and at no time did the defendants specify what additional information was required.

Eventually, Pearce was enrolled in an income-driven repayment plan, with a monthly payment of $98.50. In October 2018, he again experienced difficulties recertifying his repayment plan regarding documentation of his

6

income. Pearce alleges that he followed the defendants' instructions and used the appropriate income tax forms to document his income. The defendants, however, would repeatedly reject his renewals on the basis that more information was needed, but the defendants never specified the additional information that they claimed to require. Filing 1 at 11. Pearce alleges that the defendants' failure to approve his application and recertification documentation caused him to suffer capitalization of interest to his account balance. In addition, Pearce was employed by a government agency and qualified for discharge of his loans pursuant to the Public Service Loan Forgiveness program. Pearce alleges that the defendants prevented him from making qualifying payments for balance forgiveness, which delayed him from seeking career advancement outside of government service. Filing 1 at 12.

Plaintiff Linda Stanley is a resident of Colorado who financed her education with various Federal Direct loans. Filing 1 at 12. Her loans were serviced by the defendants. Stanley was enrolled in an income-based repayment plan with a payment obligation of less than $100.00 per month. Filing 1 at 13. In January 2018, Stanley prepared to renew her income-based repayment plan, but did not yet have completed tax returns for documentation of her income. She contacted the defendants, and was instructed to put her loans in hardship forbearance until her tax returns were available, and that there would be no adverse consequence for doing so. Relying on the defendants, Stanley placed her loans into hardship forbearance, but later, the defendants penalized Stanley for doing as she was instructed.

In February 2018, Stanley submitted her recently completed tax returns to the defendants for recertification of her income-based repayment plan. However, the defendants did not accept Stanley's submission. The defendants claimed that the adjusted income line on Stanley's return was not legible, and

directed her to complete an income self-certification letter. Stanley drafted a self-certification letter modeled from an exemplar provided by the defendants. Stanley alleges that the defendants delayed recertification of her income-based repayment plan by asserting nonexistent requirements. Filing 1 at 14. As a result, her loans were placed into hardship forbearance, she incurred interest which has been capitalized to her loan balance, and as a governmental employee eligible for the Public Service Loan Forgiveness program, she was not credited with qualifying payments, which has delayed her access to opportunities in private sector employment. Filing 1 at 15.

Plaintiff Anetra Faison is a resident of Michigan. She financed her education with a variety of FFEL loans that are serviced by the defendants. Filing 1 at 15. In September 2018, Faison received notice to renew her income-based repayment plan, which she did prior to her renewal deadline by submitting a renewal application and proof of income both electronically and by mail. Filing 1 at 15-16. Faison alleged that for several months after submitting her recertification application and proof of income, the defendants directed her to provide additional income documentation even though the information she had already provided satisfied the Department of Education's requirements. Filing 1 at 16. Faison alleges that the defendants' failure to promptly process and renew her income-based repayment plan prior to the plan's expiration cause her to incur interest charges that were then capitalized to her account balance. Faison also alleges that because she was unable to afford her monthly payment after the defendants canceled her plan, her loans were declared delinquent and she suffered an adverse credit reporting.

All named plaintiffs allege claims for breach of the defendants' servicing contract with the Department of Education, breach of the plaintiffs' promissory notes with the Department of Education, the defendants' alleged negligent

misrepresentations regarding the servicing of the plaintiffs' loans, and for an accounting at law regarding improper fees and charges allegedly incurred by the plaintiffs. Filing 1 at 23-27. In addition, Johansson alleges a claim pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, for the defendants' alleged misrepresentations in servicing his loan, and Stanley alleges a claim pursuant to the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-105, regarding the defendants' misrepresentations in servicing her loans. Filing 1 at 27-30

## III. DISCUSSION

### 1. THE INDIVIDUAL CLAIM OF PLAINTIFF ANETRA FAISON

Plaintiff Anetra Faison alleges that she received federal student loans pursuant to FFELP, and that her loans are serviced by the defendants. Filing 1 at 15. However, Faison did not allege that her FFELP loans have been purchased by the Department of Education. The complaint regarding all plaintiffs is predicated on the breach of the servicing contract between the defendants and the Department, and the breach of the promissory note between the individual plaintiffs and the Department. Faison's claims can only be understood as being predicated on a breach of a servicing contract and promissory note to which the Department was not a party. The Court understands that Faison has alleged that the defendants serviced her loans, but that allegation, standing alone, is insufficient. In essence, Faison alleged that she is the third-party beneficiary of a servicing contract, but failed to identify the parties to that contract. She is also alleging that she is a party to a promissory note with a lender other than the Department.

Essentially, the plaintiffs' complaint sets the Department as the union which links the contractual relationship between the plaintiffs and the defendants. For Faison, that union is unnamed and unknown. The absence of

9

any allegation by Faison showing the defendants' contractual relationship and obligations concerning the servicing of her loans, requires the Court to grant the defendants' motion to dismiss Faison's individual claim without prejudice. Going forward, reference to "the plaintiffs" will mean the remaining plaintiffs.

### 2. ALTER EGO LIABILITY

The defendants argue that the plaintiffs failed to sufficiently allege facts showing that the separate legal status of the defendants should be disregarded, and that Nelnet, Inc. and Nelnet Diversified Solutions should be dismissed. Filing 22 at 19-22. The defendants contend that the plaintiffs rely entirely on statements found in Nelnet's 2016 Annual Report filed with the Securities and Exchange Commission to support their argument. Filing 22 at 19. The plaintiffs argue that they have sufficiently pled that the defendants are alter egos of each other, and that Nelnet Servicing is the disclosed agent of Nelnet, Inc. and Nelnet Diversified. Filing 32 at 16-19.

The plaintiffs' complaint alleges that collectively, all three defendants are involved in servicing student loans. All defendants receive fees for servicing student loans, and are responsible for administering income-driven repayment plans. Filing 1 at 2. The plaintiffs allege that Nelnet Servicing is a wholly owned subsidiary of Nelnet Diversified Solutions, which is a wholly owned subsidiary of Nelnet, Inc. Filing 1 at 17. Each defendant lists the same Lincoln, Nebraska address, including suite number, as its principal place of business. Regarding reference to SEC filing, the plaintiffs allege that Nelnet, Inc. holds itself out as a major servicer of federal student loans, and as a party to the servicing contract with the Department of Education. Filing 1 at 18. The Court observes that the servicing contract attached to the complaint identifies Nelnet Servicing as the contractor, but the name and title of the person signing the

servicing contract on behalf of the contractor is redacted. Filing 1-1 at 1. The Court also observes that the defendants are all represented by the same lawyer and law firm.

"The doctrine of separate corporate existence does not break down merely because a corporation is a subsidiary, even if wholly owned by the parent." *Global Credit Services, Inc. v. AMISUB, Inc.,* 508 N.W.2d 836, 842 (Neb. 1993). But, a separate corporate existence of a parent and subsidiary corporation will not be recognized where one corporation is organized and controlled, and conducts its business in a manner to make it merely an agency, instrumentality, adjunct, or alter ego of another corporation. *Wolf v. Walt,* 530 N.W.2d 890, 896 (Neb. 1995). For a plaintiff to pierce the corporate veil between a parent and subsidiary corporation, more than a sharing of corporate services must be shown. *Global Credit, supra.* For the plaintiffs to pierce the Nelnet corporate veil, they must allege facts showing that Nelnet, Inc., the dominate entity, totally dominates the other entities to such an extent that there was no separate corporate existence, and the entities function solely to achieve the purposes of the dominate corporation. *Id.* Further, where a party contracts with a known agent acting within its scope of authority for a disclosed principal, the contract is that of the principal and the agent cannot be held personally liable unless the agent purports to bind itself to performance of the contract. *Broad ex rel. Estate of Schekall v. Randy Bauer Ins. Agency, Inc.,* 749 N.W.2d 478, 483 (Neb. 2008).

Here, the Court finds that the plaintiffs have alleged enough such that it is reasonable to expect that discovery may reveal evidence to substantiate the necessary elements of the plaintiffs' claim. *Twombly,* 550 U.S. at 545. The allegations regarding the defendants' ownership structure, and the specificity of its shared principal place of business address, together with the

representations attributed to Nelnet, Inc. in its SEC filing, as well as the absence of the defendants' answer to the complaint, are sufficient, at this very early stage of this litigation, to deny the defendants' motion to dismiss Nelnet, Inc., and Nelnet Diversified Solutions.

## 2. BREACH OF THE SERVICING CONTRACT

The plaintiffs allege that Nelnet Servicing entered into a servicing contract with the Department of Education on June 17, 2009, and that pursuant to the terms of that contract, the defendants agreed to comply with all federal statutes and regulations regarding the servicing of student loans. Filing 1 at 23. Nelnet Servicing, according to the plaintiffs' allegations, was the known agent of Nelnet Diversified Solutions and Nelnet, Inc., who, the plaintiffs allege were Nelnet Servicing's disclosed principals, and that Nelnet Servicing was acting as their agent when it entered into the servicing contract with the Department. The plaintiffs allege that they are intended third-party beneficiaries of the servicing contract between the defendants and the Department of Education, and that the defendants materially breached the servicing agreement by failing to administer their loans in accordance with the federal statutes and regulations referenced in the contract—specifically, certain of the Department's regulations regarding the administration of income-driven repayment plans.

In general, the Court is familiar with the defendants' arguments for dismissal, as many of the same arguments were raised in *Olsen v. Nelnet, Inc.*, 392 F.Supp.3d 1006 (D. Neb. 2019). The plaintiffs argue that *Olsen* is law of the case in this matter. Filing 32 at 19. It is not. The law of the case doctrine provides that when a court rules on an issue in a case, that decision continues to govern the same issues in subsequent stages *of the same case. In re Tri-State*

12

*Financial, LLC,* 885 F.3d 528, 533 (8th Cir. 2018). The case presently before this Court is not the same case as *Olsen*, notwithstanding that many of the same legal issues are present.

Here, the defendants assert that the plaintiffs' breach of contract claims should be dismissed because the Higher Education Act does not confer a private right of action upon federal student loan borrowers. Filing 22 at 23-24. The defendants argue that a private right of action to enforce the Act would run counter to Congress' intent in giving the Department of Education "sole and complete control" of the Act's enforcement regime. The defendants' argument regarding a private right of action misses the point, and the Court is not persuaded as to the defendants' representations regarding the extent of the Act's enforcement regime.

The plaintiffs have not alleged a suit to enforce the statutory provisions of the Higher Education Act. The plaintiffs allege that the defendants breached their servicing contract with the Department of Education by failing to properly administer the Department's own regulations regarding income-driven repayment plans—regulations which are incorporated into the servicing contract by reference. Although the plaintiffs allege that the terms of the servicing contract required the defendants to comply with all applicable federal statutes and regulations (filing 1 at 19, 23), the specific violations alleged in the complaint concern the Department's regulations (filing 1 at 19). Thus, the plaintiffs' claims concern whether the Department's regulations, which are incorporated as contract terms, have been breached. Accordingly, the only real issue is whether the plaintiffs have a right to enforce the terms in the Department's servicing contract as third-party beneficiaries.

The defendants' contention that Congress intended to give the Department sole and complete control of the Act's enforcement regime not only

missed the same point—that the plaintiffs' claimed breach concerns the Department's own regulations—but the defendants have not, and apparently cannot, direct this Court to a statutory or regulatory enforcement regime that directly addresses the servicing misrepresentations, deficiencies, and errors alleged in the plaintiffs' complaint. At best, the defendants point to the Department's regulations—not text from the Act—which provides that as part of a proceeding to limit or terminate a servicer's contract, the Secretary may take reasonable corrective actions, including payment of funds to a recipient designated by the Secretary. *See* 34 C.F.R. § 682.709; filing 22 at 32. It is unreasonable to conclude that this regulation could effect a fair remedy to address the allegations in the plaintiffs' complaint. The defendants' argument that the plaintiffs' complaint seeks to enforce the Higher Education Act is without merit.

As indicated above, the plaintiffs' breach of contract claim rests on their assertion of intended third-party beneficiary status under the servicing contract between the defendants and the Department. The parties appear to agree that the plaintiffs' breach of contract claim is governed by federal common law. Filing 22 at 25; filing 32 at 25. Federal common law applies when a federal agency is a party to the action and the outcome of the case will directly affect substantial financial obligations of the United States. *Audio Odyssey, Ltd. v. United States*, 255 F.3d 512, 520 (8th Cir. 2001). Factors to be considered for the application of federal common law include whether: (1) questions of federal liability or contract responsibility will be addressed; (2) the promotion of federal interests are at issue; (3) operations of the federal government would be burdened or subjected to variant state-law interpretations, and (4) only private rights are at issue. *See Boyster v. Roden*, 628 F.2d 1121, 1125 (8th Cir. 1980).

14

The parties have not indicated which, if any, of the relevant factors for the application of the federal common law of contracts are present in this matter. The Court's independent review concludes that the only factor present here is that only the private rights of the plaintiffs and defendants are at issue. This factor argues in favor of the application of state law, not federal common law of contracts.

However, resolution of the question regarding which law applies is of no consequence. General principals of contract law constitute construction of the federal common law of contract. *Priebe & Sons v. United States,* 332 U.S. 407, 411 (1947). Federal common law of contracts takes into account the best in modern decision and discussion. *United States v. Basin Elec. Power Co-op.*, 248 F.3d 781, 796 (8th Cir. 2001). State law provides guidance in defining the contours of the federal common law unless a significant conflict exists between an identifiable federal policy or interest and state law, or where the application of state law would frustrate specific objectives of federal legislation. *Prairie Land Holdings, LLC v. Federal Aviation Admin.,* 919 F.3d 1060, 1062 (8th Cir. 2019). Nebraska, too, looks to general contract law in matters of contract construction, in particular, in assessing claims of third-party beneficiary status. *See Podraza v. New Century Physicians of Neb.*, 789 N.W.2d 260, 267 (Neb. 2010);

The parties have not identified a substantive difference between federal common law of contracts and Nebraska contract law when determining whether a contract bestows third-party beneficiary status on a particular class. The test regarding federal common law is whether the contract reflects an express or implied intention of the contracting parties to benefit a third party. *Audio Odyssey*, 255 F.3d at 521. The intent of the contracting parties may be found if the beneficiary was reasonable in relying on the promise as

15

manifesting an intention to confer a benefit. *Id.* The beneficiary need not be specifically or individually identified in the contract, but must fall within a class clearly intended to be benefitted. *Id.*

Under Nebraska law, a third-party beneficiary must be acknowledged by express stipulation or "by reasonable intendment that the rights and interests of such unnamed parties were contemplated, and that the provision was being made for them." *Podraza*, 789 N.W. 2d at 267. The rights of the third-party beneficiary must affirmatively appear from the language of the contract properly interpreted or construed. *Id.* The party claiming third-party beneficiary status has the burden to show that the provision was for their direct benefit. *Id.*

The plaintiffs' complaint alleges that the servicing contract requires the defendants to comply with the regulations governing the Department of Education's income-based repayment plan program found at 34 C.F.R. § 685.221. Filing 1 at 19. The purpose for this program is to give a borrower experiencing a partial financial hardship the opportunity to pay a portion of their student loan debt, and with successful participation in a plan, qualify for loan forgiveness. *Id.* The plaintiffs plausibly allege facts showing that they were either participating in, or eligible to participate in, income-based repayment plans, which were administered by the defendants. As such, the complaint plausibly alleges that the defendants had actually determined that these plaintiffs were borrowers who were experiencing a partial financial hardship, and as such, eligible for participation in an income-based repayment plan.

The Department's regulations, which are incorporated into the servicing contract, plainly intend to benefit borrowers such as the plaintiffs. Instead of requiring the plaintiffs to pay their student loans pursuant to a standard

16

repayment plan which they could not afford, the plaintiffs, and others experiencing a partial financial hardship, are given the opportunity to pay a portion of their outstanding debt, and with consistent participation in the program have their remaining debt eventually forgiven. In other words, the plaintiffs, as borrowers experiencing a partial financial hardship, are unnamed parties to the servicing contract whose rights and interests are contemplated by the Department's regulations concerning the income-based repayment plan program.

In addition to providing a borrower in need of assistance with an affordable repayment plan and the opportunity for loan forgiveness, the plaintiffs allege that the Department's regulations obligate the defendants and other loan servicers to promptly process applications and renewal applications, provide eligible borrowers with specific notice regarding the annual renewal of their repayment plans, and prohibits the cancelation of an income-based repayment plan while a renewal request is being processed, as well as from capitalizing interest if the defendants require additional paperwork to process an application. Filing 1 at 5-6.

The Court finds that the plaintiffs have sufficiently alleged facts showing that their interests, as borrowers experiencing a partial financial hardship, were specifically contemplated by the Department in promulgating the relevant regulations, and specifically contemplated when these same Department regulations were included by reference in the Department's serving contract with the defendants. The plaintiffs have sufficiently alleged facts showing that the provisions allowing for affordable repayment plans, loan forgiveness, notice for renewal, prompt processing of applications, and protections with respect to plan cancelation, were specifically made for the

benefit of borrowers such as the plaintiffs, who are experiencing a partial financial hardships.

A third party may recover under a contract where their rights and interests were contemplated, and the relevant provision was being made for them. *Podraza*, 789 N.W.2d at 267. The Court finds that the regulations and contract provisions regarding borrowers experiencing a partial financial hardship contemplated a class of borrowers such as the plaintiffs, and that the provisions mentioned above were made for the benefit of such borrowers. The defendants' motion to dismiss the plaintiffs' breach of contract claims is denied.

### 3. BREACH OF THE PROMISSORY NOTE

The plaintiffs allege that they are parties to a promissory note with the Department of Education regarding their Federal Direct student loans, and that their loans are serviced by the defendant. Filing 1 at 6-15. The plaintiffs argue that the defendants, by entering into the servicing contract with the Department of Education, accepted a delegation of the loan servicing obligations found in the plaintiffs' promissory note, and became the assignees of that part of the note. Filing 1 at 24. The plaintiffs allege that the obligations assigned or delegated to the defendants include the collection of loan payments, responding to borrower inquires, processing deferment or forbearance applications, and administration of student loan repayment plans such as income-based or income-driven repayment plans. Filing 1 at 2. According to the plaintiffs, in 2016, the defendants reported that twenty percent of their revenue was attributed to the servicing of the Department's loans. Filing 1 at 18. The plaintiffs allege that the defendants breached their assigned or delegated obligations in the promissory note by failing to administer the plaintiffs' loans in accordance with federal law. Filing 1 at 24.

18

The defendants' argument for dismissal is twofold. First, the defendants argue that the plaintiffs cannot plausibly allege that the Department assigned their promissory note to the defendants. Filing 22 at 26-30. The defendants assert that the plaintiffs' allegation—that the servicing contract between the Department and the defendants functions as an assignment of the Departments' servicing rights—is merely an unadorned legal conclusion not entitled to a presumption of truth. Filing 22 at 28. The defendants further assert that the plaintiffs' allegation conflates the distinct legal concepts of assignment and delegation.

The Court is not persuaded. The defendants, as a non-signatory to the promissory note, cannot be a party in an action alleging the breach of that note unless they have assumed or been assigned the contract, and whether the contract has been assigned, or the functional equivalent of privity exist, is a fact-dependent issue, dependent on the parties' dealings, as well as the language of the relevant contracts. *Mazzei v. Money Store*, 308 F.R.D. 92, 109-10 (S.D.N.Y. 2015).

Here, the servicing contract attached to the plaintiffs' complaint actually uses the term "assign" in describing the volume of servicing allocated to a vendor such as the defendants. Filing 1-1 at 14. ("If all [servicing] requirements are not met, the Government may elect to not *assign* further volume to the contractor."). The servicing contract's statement of objectives identifies that the core mission of the Department is to ensure that all eligible individuals benefit from federal financial assistance for education beyond high school. Filing 1-1 at 22. One objective is for the Department to "[a]cquire efficient and effective commercial contract services to manage all types of Title IV student aid obligations, including, but not limited to, servicing and consolidation of outstanding debt." *Id.* The servicing contract provides that the contractor will

19

be responsible for maintaining a full understanding of all federal and state laws and regulations and Federal Student Aid requirements and "ensuring that all aspects of the service continue to remain in compliance as changes occur." Filing 1-1 at 23. Importantly, the servicing contract provides that the right to all information that is part of the Department's service is not assigned—showing that there was an assignment to servicers such as the defendants, but the assignment was only partial, and included only the rights associated with servicing and consolidating the student loans assigned by the Department. *Id.*

The plaintiffs' complaint provides specific detail about the defendants' alleged failures to service their student loans in compliance with the Department's regulations. Filing 1 at 6-15. Those allegations demonstrate that the Department did indeed, allocate servicing rights to the defendants, whether that allocation is deemed an assignment or delegation. An assignee is subject to the obligations imposed by a contract when those obligations are either expressly or impliedly assumed. *Alshaibni v. Litton Loan Servicing LP*, 528 Fed. Appx. 462, 465 (6th Cir. 2013). The plaintiffs' allegations regarding the defendants' servicing activities and deficiencies plausibly allege that the defendants, at the least, have assumed, either expressly by assignment or by implication, the Department's servicing rights and obligations. Further, if an assignor can be sued for breach of contract, so may the partial assignee if he violates the terms of the part of the contract that was assigned. *In re Ocwen Loan Servicing, LLC*. 491 F.3d 638, 645 (7th Cir. 2007).

The defendants also argue that the Department has only delegated certain servicing functions to the defendants. The distinction between an assignment of rights and the delegation of duties is that with an assignment, the assignor's rights end, but with a delegation, the delegant's obligation does

20

not end. *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 924 (2nd Cir. 1977). The plaintiffs' complaint alleges an assignment—that the Department assigned all of its servicing rights and obligations to the defendants. But ultimately, whether servicing rights were assigned, or servicing duties were merely delegated, is a factual matter that can only be resolved with the benefit of an evidentiary record. The Court finds that the plaintiffs' allegations regarding the servicing contract between the Department and the defendants allows the Court to plausibly infer that the Department assigned all servicing rights and obligations, or that the defendants assumed all servicing rights and obligations, regarding the plaintiffs' student loans.

For their second argument, the defendants assert that even if the plaintiffs sufficiently alleged an assignment of their promissory note, their claims fail because they cannot identify a specific provision of the note that has been breached. Filing 22 at 41. The defendants point to the governing law provision of the promissory note, and argue that a breach of contract claim cannot rest on a general governing law provision. Filing 22 at 41-43.

The Court observes that the plaintiffs' claims of breach do not rest on a general law provision. The plaintiffs alleged that the Department's regulations are the note's terms and conditions, and it is those regulations that have been breached. The exemplar master promissory note attached to the plaintiffs' complaint (filing 1-2) supports their argument. The master promissory note reports that the "Borrower's Rights and Responsibility Statement" provides additional information about the terms and conditions of the loan. Filing 1-2 at 10. Within that statement is a section titled "2. Laws That Apply To This Note." This section provides "the terms and conditions of loans made under this Note are determined by the HEA and other applicable federal laws and

regulations." *Id*. Thus, contrary to the defendants' argument, the Department's regulations are specifically designated as part of the terms and conditions of the Department's promissory note. As discussed above, the plaintiffs' complaint details specific regulations that they allege were breached by the defendants in servicing their loans. The defendants' argument that the plaintiffs failed to allege a specific provision that has been breached is without merit.

### 4. NEGLIGENT MISREPRESENTATION

The plaintiffs allege that the defendants wrongly supplied the plaintiffs with false information regarding their loans. Filing 1 at 25. Further, the defendants intended that the plaintiffs would rely on that false information, and that the plaintiffs actually did rely on the defendants' false information. This reliance, the plaintiffs allege, caused them to suffer increased payments or put them into costly and unnecessary hardship forbearance. The plaintiffs allege that the defendants failed to exercise reasonable care or competence in communicating critical information to the plaintiffs regarding the repayment terms of their loans.

A prima facie case for negligent misrepresentation in Nebraska requires a showing that: (1) a representation was made; (2) the representation was false; (3) the representation was made recklessly or negligently as to its truth; (4) the representation was made with the intention that it should be relied upon; (5) the representation was relied upon; and, (6) damages were suffered as a consequence. *Nelson v. Wardyn*, 820 N.W.2d 82, 87 (Neb. App. 2012). Liability for negligent misrepresentation is based on a failure to exercise reasonable care or competence in supplying correct information. *Gibb v. Citicorp Mortgage, Inc.*, 518 N.W.2d 910, 921 (Neb. 1994). The supplier of false

information for the guidance of others in business transactions is subject to liability for pecuniary loss caused by justifiable reliance upon the information. *Washington Mut. Bank, FA v. Advanced Clearing, Inc.,* 679 N.W.2d 207, 210 (Neb. 2004).

The defendants argue that the plaintiffs' negligent misrepresentation claim fails because they owed no duty of care to the plaintiffs. Filing 22 at 44. The defendants are conflating fraudulent concealment with negligent misrepresentation. An element to a fraudulent concealment claim is that the defendant had a duty to disclose a material fact. *Knights of Columbus Council v. KFS BD, Inc.,* 791 N.W.2d 317, 334 (Neb. 2010). In a negligent misrepresentation claim, if one makes a representation, the duty is to not make a false one. There is, however, an overlap between claims alleging concealment and misrepresentation. If a defendant's partial or ambiguous representation is materially misleading, then the defendant has a duty to disclose known facts that are necessary to prevent the representation from being misleading. *Id.* at 332-33.

Here, the plaintiffs allege that the defendants negligently misrepresented forbearance options, the status of renewal applications, and the documentation required for approval of income-driven repayment applications. The plaintiffs' claims are not ones of concealment, but of the defendants' duty to disclose known facts necessary to prevent their representations from being misleading.

The defendants cite *Kouma v. Blue Valley Coop,* 576 N.W.2d 854, 856 (Neb. App. 1998), in support of their argument that negligent misrepresentation claims depend upon the existence of a tort duty owed by the defendant to the plaintiff. Filing 22 at 34. *Kouma,* however, concerned whether liability could extend to a third-party for a negligent misrepresentation made

to another. *Kouma* does not stand for the proposition represented by the defendants.

Finally, the defendants offer a one-sentence argument that the plaintiffs' complaint fails to allege detrimental reliance on any of the defendants' alleged misrepresentations. Filing 22 at 35. The allegations in the complaint show that each of the plaintiffs detrimentally relied on misrepresentations made by the defendants, which forced them into hardship forbearance, or caused delays in processing their income-driven repayment applications or renewals. This reliance resulted in the capitalization of interest and delayed the plaintiff from qualifying for loan forgiveness. Filing 1 at 6-15. The defendants' argument is without merit. The Court concludes that the defendants' motion to dismiss the plaintiffs' negligent misrepresentation claims should be denied.

## 5. ACCOUNTING

An action for an accounting at law involves a contract, either expressed or implied. *Lone Cedar Ranches, Inc. v. Jandebeur*, 523 N.W.2d 364, 368 (Neb. 1994). To maintain an action for accounting at law, the plaintiffs must show that the defendants received money that was not theirs, that the defendants are bound to account to the plaintiffs, and that the plaintiffs are the owners of the money. *Id.* The defendants' first argument for dismissal is that there is no contractual relationship between the parties. Filing 22 at 36. The Court has already found that the plaintiffs have sufficiently alleged that the Department partially assigned or delegated their servicing rights to the defendants, which obligated the defendants to administer the plaintiffs' loan repayment responsibilities. The Court has also found that the plaintiffs have sufficiently alleged that they, as borrowers experiencing a partial financial hardship, are

24

the intended third-party beneficiaries of the servicing contract between the Department and the defendants.

The defendants also argue that the exemplar servicing contract attached to the plaintiffs' complaint (filing 1-1) provides that servicers, such as the defendants, are required to direct borrowers to make payments to specific payment services designated by the Treasury. Filing 22 at 36; filing 1-1 at 28-29. As such, the defendants argue, the plaintiffs cannot show that the defendants received money that was not theirs.

The plaintiffs respond that the allegation in the complaint—that "Nelnet received the funds of the Plaintiffs and Class members"—may not be disregarded in a motion to dismiss. Filing 32 at 40. The problem with the plaintiffs' response is that this bare assertion was not supported by any of the specific allegations the plaintiffs made in support of their individual claims. The Court can, and must disregard an allegation that is nothing more than an unadorned accusation. *Iqbal*, 556 U.S. at 678. Here, the Court observes that no plaintiff alleged that they made a payment directly to the defendants, or that the defendants breached the servicing contract by requiring payments to be made directly to them and not to a designated Treasury payment service. The Court finds that the allegations in the plaintiffs' complaint fail to state a claim for an accounting at law.

6. ILLINOIS CONSUMER FRAUD ACT CLAIM

Johansson, an Illinois resident, alleges that the defendants violated the Illinois Consumer Fraud Claim Act, 815 Ill. Comp. Stat. 505/2. The Illinois Consumer Fraud Act protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002); *Vanzant v. Hill's*

25

*Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). The elements of a claim are: (1) a deceptive act or practice by a defendant; (2) the defendant intended that the plaintiff would rely on the deception; (3) the deception occurred in the course of conduct involving trade or commerce; (4) actual damages to the plaintiff; and, (5) the damages are proximately caused by the deception. *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 850 (Ill. 2005). The Act permits recovery for both unfair and deceptive conduct. *Robinson* 775 N.E.2d at 960.

The defendants argue that Johansson does not allege that he was deceived, or that he relied on anything the defendants said or did. Filing 22 at 37-39. Reliance, however, is not an element of statutory consumer fraud. *Vanzant,* 934 F.3d at 739. The question is whether the defendants intended to have Johansson rely on the deception. Here, Johansson alleged that the defendants' deceptive course of conduct included several misrepresentations concerning the timeliness of his renewal application, the defendants' direction that he enter into hardship forbearance, that he was subject to a standard repayment plan, and the capitalization of interest to his loan balance. Filing 1 at 27-28. It is unreasonable to conclude that the defendants did not intend for Johansson to rely on these alleged misrepresentations. Further, Johansson alleged that he did rely on the defendants' misrepresentations when he placed his loans into forbearance and resubmitted his renewal application after the defendants informed him that his recertification had not been processed. Filing 1 at 7.

The defendants also argue that Johansson only alleges unspecified financial harms concerning a delay in his progress toward loan forgiveness, and an adverse credit reporting. Filing 22 at 49. Actually, Johansson alleges more injuries than the defendants represent. In addition to a delay in loan

26

forgiveness and adverse credit reporting, Johansson alleges damages for the loss of an interest subsidy, and the capitalization of $26,194.27 in interest to his loan balance. The Court finds that the damages that Johansson has alleged, if supported by evidence, are more than a mere unspecified financial harm.

The Court finds that Johansson has sufficiently alleged a claim under the Illinois Consumer Fraud Act regarding the defendants' alleged deceptive course of conduct. [1]

### 7. COLORADO CONSUMER PROTECTION ACT CLAIM

Stanley, a Colorado resident, alleges that the defendants violated the Colorado Consumer Protection Act. The conduct Stanley complains of concerns the defendants' several alleged misrepresentations, which included directing her to hardship forbearance while her renewal application was being processed, fabricating information about the requirements for income verification, misrepresenting that her loans were subject to interest capitalization, misrepresenting the amount of her monthly payment after recertification, and misrepresenting that she was not entitled to continue her payments pursuant to her income-driven repayment plan after the timely submission of her renewal application. Filing 1 at 30-31.

In part, the defendants ground their motion for dismissal of Stanley's Colorado Consumer Protection Act claim on their assertion that Stanley referenced an "inapposite subsection" of the Act in the complaint. Filing 22 at 50-51. The Court observes that in paragraph 137 of the complaint, Stanley

---

[1] The defendants' motion did not seek dismissal on the ground that Johansson did not sufficiently allege a claim under the Act regarding the defendants' unfair conduct. The Court notes that Johansson alleged that the defendants' course of conduct was both deceptive and unfair.

defines her claim by quoting text from the proper statutory provision, Colo. Rev. Stat. § 6-1-105(1)(e), but erroneously attributes this text to Colo. Rev. Stat. § 6-1-105(c). Filing 1 at 30. Stanley, in her brief in opposition, acknowledged what was obvious—that citation to the "inapposite subsection" was a "scrivener's error." Stanley directed the defendants to the correct citation for the text quoted in the complaint, and posited arguments opposing grounds for dismissal not actually asserted or argued by the defendants in their brief in support. Filing 32 at 36-37.

In their reply brief, instead of addressing Stanley's arguments, the defendants characterized Stanley's acknowledgement of a scrivener's error as an attempt to recast her claims under a different statutory provision, or using her brief in opposition to dismissal, as a vehicle to amend her complaint. Filing 35 at 17. "Pleadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). Justice here requires that the defendants, as well as this Court, read the actual words in Stanley's complaint, and understand that an obvious citation error in one paragraph of her complaint cannot be the basis for the dismissal of her claim.

Finally, the defendants assert that Stanley's claim for damages on behalf of a putative class of Colorado plaintiffs should be dismissed because monetary damages are unavailable in class actions under the Act. The Act, in § 6-1-113(2)(a)(I-III) provides for an award of actual damages, statutory damages, or treble actual damages for bad faith conduct, *except in a class action*. Additionally, § 6-1-113(2)(b) provides that in a successful action, the court may tax of the costs of the action and award reasonable attorney fees, but again, *except in a class action. See Martinez v. Nash Finch Co.*, 886 F.Supp.2d 1212, 1218 (D. Colo. 2012).

28

Stanley's prayer for relief does not specifically request monetary damages—either actual, statutory, or treble. Instead, she seeks "damages under the Colorado Consumer Protection Act," which necessarily would not include actual, statutory, or treble damages. Filing 1 at 31. The damages Stanley specifically requests in her prayer for relief are, with two exceptions, non-monetary. She prayed for "an order enjoining Defendant's (sic) unfair, unlawful, and/or deceptive practices; declaratory relief; attorneys' fees; and any other just and proper relief available under the Colorado Consumer Protection Act." Filing 1 at 32. Stanley also prays for an award of punitive damages for the defendants' "gross, oppressive, or aggravated conduct."

Comparing damages that the Act precludes in a class action with Stanley's prayer for relief on behalf of the class, the Court observes that Stanley does not seek actual or statutory damages under the Act. Thus, the defendants' motion to dismiss or strike Stanley's claim for money damages on behalf of a class is a nullity. Stanley's prayer on behalf of the class for an award of attorneys' fees is, however, precluded by the plain language of § 6-1-113(2)(b), and will be stricken. Further, the Court understands that Stanley's prayer for punitive damages on behalf of the class would include treble actual damages, and as such, must also be stricken pursuant to § 6-1-113(2)(a)(III).

IT IS ORDERED:

1.    The defendants' motion to dismiss (filing 21) is granted in part and in part denied.

2.    Plaintiff Anetra Faison's claims are dismissed without prejudice.

29

3.    The remaining plaintiffs' claim for an accounting at law is dismissed.

4.    Plaintiff Linda Stanley's prayer for relief on behalf of the class for an award of attorneys' fees and punitive damages is stricken.

5.    This matter is referred to the Magistrate Judge for case progression.

Dated this 26th day of March 2021.

BY THE COURT:

John M. Gerrard
Chief United States District Judge

30