## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ANDREW JOHANSSON, JON PEARCE, and LINDA STANLEY, on behalf of themselves and the Class Members described herein, | ) ) ) ) | Case No. 4:20-cv-03069-JMG-CRZ |
| Plaintiffs, | ) ) | **PLAINTIFFS' MOTION FOR LEAVE** |
| v. | ) ) ) | **TO FILE REPLY BRIEF IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS** |
| NELNET, INC., a Nebraska Corporation, NELNET DIVERSIFIED SOLUTIONS, LLC, a Nebraska limited liability company, and NELNET SERVICING LLC, a Nebraska limited liability company, | ) ) ) ) ) ) | **AND RECOMMENDATIONS INSTANTER** |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE REPLY BRIEF IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS INSTANTER

Pursuant to Fed. R. Civ. P. 72(b)(2), NECivR 72.2(a), and NECivR 7.1(c), Plaintiffs, through their undersigned counsel, respectfully request leave to file a Reply Brief in Support of Plaintiffs' Objections to Magistrate Judge's Findings, attached hereto as Exhibit A. In support thereof, Plaintiffs state as follows:

1.      On August 4, 2022, Plaintiffs filed Objections to Magistrate Judge's Findings and Recommendation (ECF 167) and an accompanying brief (ECF 168).

2.      On August 18, 2022, Defendants filed a Brief in Opposition to Plaintiffs' Objections (ECF 169).

3.      Plaintiffs' Reply does not repeat Plaintiffs' initial arguments, but rather addresses factual and legal issues raised in the opposing brief.

1

WHEREFORE, Plaintiffs respectfully request that this Court grant Plaintiffs leave to file a Reply Brief in Support of Plaintiffs' Objections to Magistrate Judge's Findings, attached hereto as Exhibit A.

Respectfully submitted,

*s/ Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD**.
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

2

## CERTIFICATE OF SERVICE

I, Anthony Fiorentino, certify that on August 22, 2022, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

*s/ Cassandra P. Miller*
Cassandra P. Miller


Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD**.
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

3

# **EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| ANDREW JOHANSSON, JON PEARCE, | ) | |
| and LINDA STANLEY, on behalf of | ) | Case No. 4:20-cv-03069-JMG-CRZ |
| themselves and the Class Members | ) | |
| described herein, | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' REPLY BRIEF IN** |
| | ) | **SUPPORT OF PLAINTIFFS'** |
| v. | ) | **OBJECTIONS TO MAGISTRATE** |
| | ) | **JUDGE'S FINDINGS AND** |
| NELNET, INC., a Nebraska Corporation, | ) | **RECOMMENDATIONS** |
| NELNET DIVERSIFIED SOLUTIONS, | ) | |
| LLC, a Nebraska limited liability | ) | |
| company, and NELNET SERVICING | ) | |
| LLC, a Nebraska limited liability | ) | |
| company, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' OBJECTIONS**
**TO MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS**

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD.**
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

Plaintiffs submit the following brief pursuant to Fed. R. Civ. P. 72(b)(2) and NECivR 72.2(a) in reply to Nelnet's Brief In Opposition To Plaintiffs' Objections to the Magistrate Judge's Findings And Recommendations.

Plaintiffs object to the Magistrate Judge's finding that the "allegations in the initial complaint did not afford Defendants sufficient notice of the allegations" because the current class definition was "not sufficiently based on the claims and theories in the operative pleading." (ECF 166, Page ID # 3925-3926). As noted in Plaintiffs' brief, this finding was contrary to at least four communications between the parties, in which Nelnet acknowledged that the modified class definition was based on the original complaint. (ECF 159-2, Page ID # 3785; ECF 159-3, Page ID # 3787; ECF 159-7, Page ID # 3796-3797; ECF 141-15, Page ID #3260).

These admissions refute any argument that Defendants were somehow surprised by the class definition. (Brf. at 13). In their 28-page brief, Defendants have not denied making these admissions, nor have they disputed their meaning. They simply avoid any discussion of their prior statements because those statements show that Nelnet was not, in fact, caught off guard by Plaintiffs' class definition. The Court should not take seriously any arguments that are contradicted by those statements.

Nelnet's current argument is that Plaintiffs' theory of liability, as set forth in their motion to certify, is "entirely absent" from the complaint, and constitutes a "radical expansion of the scope of this litigation." (Def. Brf. at 1, 19). These claims are at odds with Nelnet's previous statement that the modified class definition "resembles the allegations in the complaint" and was "covered in [the parties'] discussions" over a period of several months before the class definition was served. (ECF 159-2, Page ID # 3785). If the Court disregards all of Defendants' arguments that they themselves do not believe, there is simply nothing left.

2

With respect to Nelnet's remaining arguments, Plaintiffs have already addressed them in their Response to Nelnet's Motion to Strike (ECF 160, Page ID # 3800-3827). For the Court's convenience, Plaintiffs have attached a copy of the Response hereto. (Appendix A).

WHEREFORE, Plaintiffs respectfully request that this Court grant Plaintiffs' objections and deny Defendants' Motion to Strike the class allegations of Plaintiffs' complaint, and deny Defendants' Motion to Strike Plaintiffs' Motion for Class Certification.

Respectfully submitted,

*s/ Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD**.
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

3

## CERTIFICATE OF SERVICE

I, Anthony Fiorentino, certify that on August 22, 2022, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

*s/ Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD**.
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

4

# **APPENDIX A**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

ANDREW JOHANSSON, JON PEARCE, )
and LINDA STANLEY, on behalf of )  Case No. 4:20-cv-03069-JMG-CRZ
themselves and the Class Members )
described herein, )
              Plaintiffs, )
 )
 )  **PLAINTIFFS' BRIEF IN OPPOSITION**
 )  **TO DEFENDANTS' JOINT MOTION**
    v. )  **TO STRIKE PLAINTIFFS' CLASS**
 )  **ACTION ALLEGATIONS AND**
NELNET, INC., a Nebraska Corporation, )  **MOTION FOR CLASS**
NELNET DIVERSIFIED SOLUTIONS, )  **CERTIFICATION**
LLC, a Nebraska limited liability )
company, and NELNET SERVICING )
LLC, a Nebraska limited liability )
company, )
 )
           Defendants. )

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' JOINT MOTION TO STRIKE PLAINTIFFS' CLASS
## ACTION ALLEGATIONS AND MOTION FOR CLASS CERTIFICATION

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

Anthony Fiorentino
**FIORENTINO LAW OFFICES, LTD.**
432 N Clark St, #202
Chicago, IL 60654
Tel.: (312) 853-0050
Fax: (312) 853-3254
anthony@fiorentinolaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.    INTRODUCTION ........................................................................................... 1

II.   BACKGROUND ON IDR PLANS AND FORBEARANCES ............................................... 3

III.  STATEMENT OF FACTS ............................................................................................ 3

V.    ARGUMENT ............................................................................................. 10

    a.   The modified definition is rooted in the original factual allegations, causes of action, claims for damages, and statutory and contractual provisions. .................................................. 10

    b.   Because the modified definition does not expand the scope of liability, but rather narrows it, the modification should be allowed. ................................................................................... 12

    c.   The modified definition does not rely on any factual averments that were not in the original complaint; it merely makes the class ascertainable. ..................................................... 14

    d.   The "law of the case" doctrine does not entitle Nelnet to the relief it seeks. ................... 15

    e.   Nelnet's motion to strike should not be permitted at this late stage of the proceedings because it would substantially prejudice Plaintiffs' case. ......................................................... 17

    f.   Nelnet's argument relies on case law that is inapposite. .................................................. 18

VI.  CONCLUSION ......................................................................................... 22

# TABLE OF AUTHORITIES

**CASES:**

*Abraham v. WPX Energy Prod., LLC*,
   322 F.R.D. 592 (D.N.M. 2017) ...................................................................... 11, 17

*Albert v. Carovano*,
   851 F.2d 561 (2d Cir. 1988) (en banc) ................................................................ 15

*Alvarez v. Office Depot, Inc*,
   No. CV 17-7220 PSG (AFMx), 2019 U.S. Dist. LEXIS 109974
   (C.D. Cal. June 27, 2019) .................................................................................... 21

*Bartholet v. Reishauer A.G. (Zurich)*,
   953 F.2d 1073 (7th Cir.1992) .............................................................................. 15

*Bartle v. Td Ameritrade Holdings Corp.*,
   No. 20-00166-CV-W-BP, 2021 U.S. Dist. LEXIS 214158
   (W.D. Mo. Sep. 15, 2021) ............................................................................... 13-14

*Brown v. Am. Airlines, Inc.*,
   285 F.R.D. 546 (C.D. Cal. 2011) ......................................................................... 21

*Chapman v. First Index, Inc.*,
   796 F.3d 783 (7th Cir. 2015) ........................................................................... 14-15

*Clarke v. Baptist Mem'l Healthcare Corp.*,
   264 F.R.D. 375 (W.D. Tenn. 2009) ...................................................................... 20

*Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*,
   2008 U.S. Dist. LEXIS 70995, 2008 WL 2817106
   (E.D. Mo. July 21, 2008) ..................................................................................... 10

*First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*,
   477 F.3d 616 (8th Cir. 2007) ........................................................................... 15-16

*Gates v. Rohm & Haas Co.*,
   265 F.R.D. 208 (E.D. Pa. 2010), aff'd 655 F.3d 255 (3d Cir. 2011) ................. 11-12

*Hatmaker v. Memorial Medical Center*,
   619 F.3d 741 (7th Cir. 2010) ............................................................................... 14

*Hays v. Nissan N. Am.*,
   No. 4:17-CV-00353-BCW, 2019 U.S. Dist. LEXIS 240713 (W.D. Mo. Sep. 16, 2019)... 19,20

*In re Initial Public Offering Sec. Litig.*,
   483 F.3d 70 (2d Cir. 2006) .................................................................................. 14

*In re Integra Realty Res., Inc.*,
   354 F.3d 1246 (10th Cir. 2004) ........................................................................ 16

*In re Monumental Life Insurance Co.*,
   365 F.3d 408, 414 (5th Cir. 2004) .................................................................... 11

*In re Wholesale Grocery Prods. Antitrust Litig.*,
   No. 09-MD-2090 ADM/TNL, 2016 U.S. Dist. LEXIS 121006, (D. Minn. Sep. 7, 2016) ..... 19

*In re Zurn Pex Plumbing Products Liab. Litig.*,
   267 F.R.D. 549 (D. Minn. 2010), aff'd 644 F.3d 604 (8th Cir. 2011) ................... 16

*Johnson v. City of Shelby*,
   574 U.S. 10 (2014) ............................................................................................ 14

*Junod v. NWP Servs. Co.*,
   No. 8:14-cv-1734-JLS, 2016 U.S. Dist. LEXIS 195195 (C.D. Cal. July 18, 2016) ........... 21

*Kasalo v. Harris & Harris, Ltd.*,
   656 F.3d 557 (7th Cir. 2011) ............................................................................ 19

*Klein v. TD Ameritrade Holding Corp.*.
   No. 8:14-cv-396, 2018 U.S. Dist. LEXIS 157501 (D. Neb. July 12, 2018).................... 19, 20

*Labrier v. State Farm Fire & Cas. Co.*,
   315 F.R.D. 503 (W. D. Mo.) .............................................................................. 13

*Murphy v. Gospel for Asia, Inc.*,
   327 F.R.D. 227, 234 (W.D. Ark.) ...................................................................... 11

*Robidoux v. Celani.*,
   987 F.2d 931, 937 (2d Cir. 1993)....................................................................... 11

*Ruiz Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ............................................................................ 9

*Sandoval v. Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) ............................................................. 19, 20

*Savanna Grp., Inc. v. Trynex, Inc.*,
   No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) .................. 12, 18

*Smith v. Brown & Williamson Tobacco Corp.*,
   174 F.R.D. 90, 92 n.2 (W.D. Mo. 1997) ............................................................ 11

*Smith v. SEECO, Inc.*,
   4:15CV00147 BSM, 2016 U.S. Dist. LEXIS 90387, (E.D. Ark. Mar. 11, 2016)............ 19, 20

*Speraneo v. Zeus Tech. Inc.*,
   No. 4:12-CV-578-JAR, 2012 U.S. Dist. LEXIS 80263 (E.D. Mo. June 11, 2012) ............... 10

*Stanbury Law Firm, P.A. v. IRS*,
   221 F.3d 1059 (8th Cir. 2000) ................................................................ 10

*United States ex rel. Kuriyan v. HCSC Ins. Services Co.*,
   CIV 16-1148 JB/KK, 2021 WL 5998603 (D.N.M. Dec. 20, 2021) ...................................... 17

*Webb v. Hiykel*,
   713 F.2d 405 (8th Cir. 1983) ................................................................ 14

*Weisfeld v. Sun Chem. Corp.*,
   84 F. App'x. 257 (3d Cir. 2004) ................................................................ 19

*Weitzner v. Sanofi Pasteur, Inc.*,
   3:11-CV-02198, 2017 WL 3894888 (M.D. Pa. Sept. 6, 2017)
   aff'd, 909 F.3d 604 (3d Cir. 2018) ................................................................ 11, 12

## STATUTES AND RULES:

34 C.F.R § 685.205 ................................................................ 7, 12, 15

Fed. R. Civ. P. 12 ................................................................ 10

Fed. R. Civ. P. 23 ................................................................ 2, 15, 16, 19

Fed. R. Civ. P. 54 ................................................................ 17

NECivR 72.1 ................................................................ 16

## I.   INTRODUCTION

Plaintiffs are four individuals who are burdened with substantial sums of student loan debt, which has been unlawfully increased by the predatory actions of Nelnet Inc. and its subsidiaries (collectively "Nelnet"). While Nelnet has profited handsomely from its government contracts to service federal loans, the borrowers of such loans have been forced to put off marriages, delay home purchases, and forgo professional opportunities because of the burdens imposed by their educational debts.

Plaintiffs seek to represent a class of borrowers who Nelnet enrolled in costly hardship forbearances when the borrowers attempted to enroll in affordable, Income-Driven Repayment plans ("IDR plans"). This practice has significantly increased the debts of thousands of borrowers, who had already struggled to pay back their student loans.

When Plaintiffs filed their Complaint, they reasonably suspected that Nelnet's predatory actions on their accounts were systemic and constituted a course of conduct affecting thousands of borrowers. Discovery has now revealed this to be the case.

The Magistrate Judge directed Plaintiffs to formulate a search query that Nelnet could use to identify class members by searching its computer database. (ECF 89). In accordance with the order, Plaintiffs formulated a query to serve as its finalized class definition. (ECF 140, Page ID # 3036 and ECF 141-13, Page ID # 3252 – 3256). The query was crafted with precision, and it was carefully tailored to assure that similarly-situated borrowers would be identified and would receive notice of their claims.

Using the query, Defendants conducted a search of their computer records. The search revealed that Nelnet's practice of enrolling borrowers in hardship forbearances, without their written consent, has inflated the principal loan balance of at least 127,000 federal loan borrowers

across the country. (ECF 142, Page ID # 3589 and ECF 146, Page ID # 3704). It is now clear that Plaintiffs' claims are typical of the putative class, and that the class members are readily ascertainable; have common claims based on objective criteria; and meet all requirements for class certification under Rule 23.

After a lengthy period of discovery, the case has now reached the stage of class certification. Plaintiffs' finalized class definition, as refined through the course of discovery, supports the four primary causes of action alleged in the complaint: (1) Breach of Nelnet's servicing contract with the federal government; (2) breach of the borrowers' Master Promissory Notes ("MPNs"); (3) negligent misrepresentation under Nebraska law; (4) and violations of the consumer laws of Illinois and Colorado.

Because the finalized class definition was based on the factual allegations in the complaint and its legal theories of recovery, Plaintiffs' motion to certify the class, which was filed on May 19, 2022, contained no surprises. Accordingly, Nelnet did not raise any objections to the class definition when it was first propounded, or at any time prior to the filing of Plaintiffs' motion for class certification. However, Defendants have now moved to strike the definition for purely technical reasons, seeking to avoid a decision on the merits.

According to Nelnet, the class definition should be stricken because: (1) the class definition was modified in such manner that it is not sufficiently rooted in the allegations of the original complaint; and (2) the class definition is precluded by the Magistrate Judge's denial of Plaintiffs' previous motion to amend the complaint, which sought to add new claims. (ECF 151, Page ID # 1937-1939). Nelnet's motion should be denied for the following reasons:

1.  Contrary to Nelnet's argument, the class definition is based on allegations in the original complaint: that Nelnet "improperly placed the loans of countless borrowers into hardship

forbearance during the IDR recertification process, causing unpaid accrued interest to be capitalized, or added to the borrower's principal loan balance." (ECF 1, Compl., Page ID # 3, ¶ 8)

2. The Magistrate Judge's denial of Plaintiffs' motion to add new claims had no bearing on whether the original class definition may be modified.

3. Nelnet's argument is contrary to representations that Defendants made to Plaintiffs over several months, revealing that it lacks merit, and Plaintiffs would be prejudiced if Nelnet is permitted to untimely strike the class definition at this late stage in the proceedings.

## II.    BACKGROUND ON IDR PLANS AND FORBEARANCES

The background on IDR Plans and Forbearances can be found here: ECF 158, Page ID # 3766.

## III.    STATEMENT OF FACTS

On June 15, 2020, Plaintiffs filed a putative class action complaint on behalf of the following nationwide class:

> All individuals with federal student loans serviced by Nelnet who, at any time on or after a date five years prior to the filing of this action: i) were enrolled in an IDR plan; ii) timely submitted an application to renew the plan; iii) the application was eventually approved; iv) but the IDR plan was temporarily discontinued by Nelnet while the application was being processed.

(ECF 1, Compl., Page ID # 20, at ¶ 81). The complaint alleged that Nelnet "improperly placed the loans of countless borrowers into hardship forbearance during the IDR recertification process, causing unpaid accrued interest to be capitalized, or added to the borrower's principal loan balance." (*Id.,* Page ID # 3, at ¶ 8). According to the complaint, the hardship forbearances were unlawful because they are only permitted if the borrower is unable to make payments "due to illness or other acceptable reasons," and they are *not* "authorized as a means to provide loan

servicers with additional time to process IDR applications." (*Id.,* Page ID # 6, at ¶ 20). In addition, Plaintiffs alleged that they and similarly-situated borrowers timely submitted applications to renew their IDR plans, which were erroneously rejected by Nelnet, causing their IDR plans to expire. (*Id.,* Page ID # 6-13, at ¶¶ 23-25; 32-33; 36-42; 47-48).

Nelnet's Answer to the Complaint raised various issues of an individualized nature, disputing whether Plaintiffs' IDR renewal applications were timely submitted, properly completed, or accompanied by sufficient proof of income. (ECF 41, Answer, Page ID # 391, at ¶ 25; Page ID # 397-398, at ¶ 41; Page ID # 401, at ¶¶ 50, 52). In order to devise a more workable class definition, and eliminate any issues of individualized proof, Plaintiffs deposed Graham Collinge, Nelnet's Director of Information Technology Delivery, about the searchability of Nelnet's computer database. (ECF 140, Page ID # 3034 and ECF 141-25, Page ID # 3507, at 5:15-21). Collinge testified as follows:

- The system's "borrower history" database documents the receipt of all communications from the borrower, and it records all information that Nelnet receives in an IDR renewal application. (ECF 141-25, Page ID # 3512, at 27:22-28:9, and Page ID # 3520, at 58:6-13).

- The system records the use of forbearances, which are designated by a specific code. (*Id*., Page ID # 3518, at 50:9-14). Whether the forbearance was requested by the borrower, and the manner in which it was requested, are also recorded. (*Id*., Page ID # 3519, at 54:13-21).

- The system records all interest capitalizations, including the date of capitalization. (*Id*., Page ID # 3520, at 59:18-60:5). The system is also capable of ascertaining the total amount of interest capitalized during certain periods. (*Id*., Page ID # 3525, at 78:10-17).

Collinge's testimony revealed that Nelnet was capable of performing a search query that would identify borrowers who: (1) were enrolled in a hardship forbearance; (2) that was not requested in writing; (3) while the borrower's IDR renewal application was pending; (4) thereby causing the borrower's accrued interest to be capitalized.

On January 25, 2022, the Magistrate Judge held a hearing on how Plaintiffs intended to identify putative class members. (ECF 88). At the hearing, Plaintiffs' counsel stated that Plaintiffs intended to proffer a "query," or list of search criteria, that Defendants could use to search Nelnet's computer database. (*Id.* at 8:20). Plaintiffs' counsel explained that the purpose of the query was to "identify the number of class members." (*Id.* at 10:15). Defense counsel confirmed that the query would be used to "ascertain the identities of [the] class members through defendant computer records." (*Id.* at 13:49). Thus, it was clear to both parties and the Court that the search query would serve as the basis of a finalized class definition.

The Magistrate Judge ordered Plaintiffs to serve their "last and final" search query on Defendants by February 10, 2022. (*Id.* at 33:56). The Court reiterated that the search query must disclose to Defendants "exactly what it is [Plaintiffs] are looking for" to certify a class. (*Id.*) The Court further advised that, within seven days of receiving the search query, Nelnet would be required to "say one way or another" if the search could be performed. (*Id.* at 35:45.) The Court added that, if Defendants wished to raise any issues relating to the query, they should "bring it to [the Court's] attention." (*Id.* at 35:00). The Court also asked that any remaining issues regarding the search queries be based upon "the level of cooperation that's existing between the parties." (*Id.* at 34:10).

The Magistrate Judge then inquired as to the status of expert witness reports. (*Id.* at 35:45). Plaintiffs' counsel explained that they had disclosed two expert witnesses to opine on the search

capabilities of Nelnet's computer system, but expert reports and discovery would only be necessary if Defendants claimed that their computer system was "not capable of running a search to identify class members." (*Id.* at 32:00-32:33). Defense counsel stated that Nelnet would not commit to executing "any imaginable query," but confirmed that if the query "looks like [what the parties have] been discussing," it was "still [Nelnet's] intention to" run the query and "provide that…information." (*Id.* at 33:04-33:55). Accordingly, the Court directed Nelnet "to either notify the Court and Plaintiffs' counsel that the query cannot feasibly be run as requested, or they shall begin running the query." *Id.*

After the hearing, Plaintiffs created a search query ("Search Query 1") that would serve as their finalized class definition. The modified class was defined as follows:

> All individuals who, according to Defendants' records, had a Federal Direct student loan serviced by Nelnet, and, at any time on or after a date five years (breach of contract) or four years (negligent misrepresentation) prior to the filing of this action, experienced the following:
>
> a. The borrower was enrolled in an IDR plan, but the income-driven payments were cancelled when the plan was not renewed prior to the annual deadline;
>
> b. Within 60 days of the cancellation of income-driven payments, Nelnet enrolled the borrower in a hardship forbearance, and the interest that accrued during the forbearance was capitalized;
>
> c. The hardship forbearance was processed over the phone, and the borrower never submitted a written request for the hardship forbearance;
>
> d. The borrower's loans were not in default status when the hardship forbearance was approved.

The class definition was modified to utilize the search capabilities revealed during the deposition of Nelnet's IT official. It was also tailored to eliminate the issues of individualized proof raised in Nelnet's Answer to the Complaint (*i.e.*, whether a given IDR renewal application was timely submitted, properly completed, or accompanied by sufficient proof of income).

6

However, the modified definition *was still based entirely on allegations in the original complaint*: that Nelnet "improperly placed the loans of countless borrowers into hardship forbearance during the IDR recertification process;" that Plaintiffs incurred interest capitalizations as a "proximate result" of the forbearances; that these actions violated 34 C.F.R § 685.205(a); that this practice breached Nelnet's servicing contract with the government and Plaintiffs' promissory notes; and that Defendants' conduct violated state law. (ECF 1, Compl., Page ID # 3, at ¶ 8; Page ID # 8, at ¶ 29; Page ID # 13, at ¶ 49; Page ID # 23 - 25, at ¶¶ 97, 103, and 110; Page ID # 27, at ¶ 125; Page ID # 30, at ¶ 138).

The modified definition featured only two material changes: (1) Instead of predicating the illegality of the hardship forbearance solely on the fact that it was applied during the IDR renewal process, the modified definition also cited the fact that such forbearances were not requested in writing. See [modified definition in cert motion]; and (2) Plaintiffs inserted their original allegations of monetary damages (the interest capitalizations) directly into the class definition.

Pursuant to the Court's order, Plaintiffs propounded Search Query 1 on Nelnet on February 10, 2022. (ECF 140, Page ID # 3036 and ECF 141-13, Page ID # 3254). At the same time, Plaintiffs proffered three other search queries to Nelnet ("Search Queries 2-4") (*id.* at Page ID # 3254 – 3255) that were based on new factual claims and causes of action that were subsequently added to the Proposed Amended Complaint on March 21, 2022.[1]

---

[1] Search Queries 2-4 were based on the following new claims: (1) Nelnet made inconsistent statements to Plaintiffs regarding their IDR renewal deadlines; (2) Nelnet's method of electronic notification of the IDR renewal deadline violated the borrowers' loan contracts; and (3) borrowers who experienced a decrease of income were improperly deprived of financial benefits to which they were entitled under the HEA. (ECF 141-13, Page ID # 3254 - 3255). Unlike Search Query 1, none of these claims were based on factual averments in the original complaint.

After Plaintiffs propounded Search Queries 1-4, Nelnet confirmed that Search Query 1 was based on the original allegations, but they objected to executing Search Queries 2-4 until the Court granted leave to amend because the latter searches were based on new claims.

> DEFENSE COUNSEL: "We are in the process of reviewing the list of query searches. We expect to begin writing the query associated with Search 1 this week, consistent with the Court's January 25 Order. **We are giving special emphasis to 'Search 1,' which is the only one that resembles any of the topics covered in our discussions over the past few months or the allegations in the complaint** . . . [but] Searches 2, 3, and 4 . . . implicate newly-contrived issues which are divorced from the allegations in the complaint . . ."

(ECF 158, Page ID # 3772 and ECF 159-2, Page ID # 3785).

On February 17, 2022 – Nelnet's deadline to state whether the queries could be executed – Nelnet stated as follows in another email to Plaintiffs:

> DEFENSE COUNSEL: "**Searches 2, 3, and 4 are irrelevant to the case as currently constituted (and would only become relevant if and to the extent the Court grants plaintiffs leave to amend)**, we object to undertaking the effort to write and execute the queries associated with Searches 2, 3, and 4 at this juncture. Instead, we plan to await a decision on plaintiffs' anticipated motion for leave to amend before devoting effort toward writing and executing those queries. . . **With respect to Search 1, I can confirm that defendants' IT personnel have already begun writing the associated database query, consistent with the Court's 1/25 order.**"

(ECF 140, Page ID # 3044 and ECF 141-15, Page ID # 3259 – 3261).

In a follow-up email, Nelnet reiterated its position that Search Query 1 was based on the original allegations, but Search Queries 2-4 should await a ruling on Plaintiffs' motion to amend the complaint because those searches were based on new claims.

> DEFENSE COUNSEL: "[D]efendants do oppose plaintiffs' motion for leave to amend. Can you please let me know what plaintiffs' position is with respect to our view that **defendants shouldn't devote the resources needed to run the queries related to Searches 2 and 4 until the Court decides the motion for leave to amend?** (Search 3 isn't feasible for reasons I'll detail in a separate message.)"

(ECF 158, Page ID # 3773 and ECF 159-2, Page ID # 3787).

8

Because Nelnet conceded that Search Query 1 was feasible and not contingent on Plaintiffs' motion to add new claims, the parties struck an agreement: Search Query 1 would be executed, but Search Queries 2-4 would await a ruling on Plaintiffs' motion to amend the complaint. (ECF 158, Page ID # 3773 and ECF 159-2, Page ID # 3791).

Additionally, because the parties agreed that Search Query 1 was both feasible and grounded in the original complaint, Plaintiffs elected to forgo expert testimony, and they proceeded to build their case around the class definition contemplated by Search Query 1.

On April 29, 2022, Defendants confirmed that Search Query 1 had been fully executed, but it reiterated its position that Search Queries 2-4 should not proceed:

> DEFENSE COUNSEL: "[W]e have completed writing and executing the query associated with 'Search 1' . . . we will produce the results of the query associated with 'Search 1' tomorrow afternoon. **As for the remaining queries associated with Searches 2, 3, and 4 . . . those queries will only become relevant in the event the Court grants plaintiffs leave to amend**."

(ECF 158, Page ID # 3774 and ECF 159-2, Page ID # 3796).

Shortly thereafter, Nelnet provided Plaintiffs with a chart that contained the results of Search Query 1. (ECF 142, Page ID # 3589 and ECF 146, Page ID # 3704). According to the chart, 127,773 borrowers met the criteria of Search Query 1. (*Id.*)

On May 4, 2022, the Court denied Plaintiffs' motion to amend the complaint and add new claims. (ECF 137). Thus, Nelnet was not required to execute Search Queries 2-4. Based on the Magistrate Judge's order, Plaintiffs omitted any claims based on Search Queries 2-4 when they filed their motion for certification on May 19, 2022. (ECF 138-147). They included only a single nationwide class based on Search Query 1 (and several state-based sub-classes). (ECF 140, Page ID # 3033). From the time Plaintiffs propounded Search Query 1 on Nelnet in February 2022, to the time Plaintiffs filed their motion for certification on May 19, 2022, Nelnet raised no objections

to a class definition based on Search Query 1, either with the Court, or with Plaintiffs. On the contrary, Nelnet gave every indication that the parties were in agreement that, even if the Court denied the Plaintiffs' request to amend the complaint and add Search Queries 2-4, Search Query 1 would form the basis for the motion for class certification.

## IV.   LEGAL STANDARD

A motion to strike allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In ruling on a motion to strike, the Court views the pleadings in the light most favorable to the pleader. *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 U.S. Dist. LEXIS 70995, 2008 WL 2817106, at *2 (E.D. Mo. July 21, 2008). "Striking a party's pleadings is an extreme measure, and, as a result, motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000). District courts have harshly criticized motions to strike, stating that "they can be nothing other than distractions." *Speraneo v. Zeus Tech. Inc.*, No. 4:12-CV-578-JAR, 2012 U.S. Dist. LEXIS 80263, at *3 (E.D. Mo. June 11, 2012).

## V.   ARGUMENT

### a.   The modified definition is rooted in the original factual allegations, causes of action, claims for damages, and statutory and contractual provisions.

Nelnet claims that the modified definition is improper because it is based on an "entirely new, unpled theory of liability" that would "represent an obvious expansion of the scope of this case." (Def. Brf. at 3-4). Given that Defendants, on multiple occasions, have acknowledged the substantial overlap between the original allegations and the modified class, this claim seems untrue. The parties reached consensus on Search Query 1 because it relied on the same factual averments in the complaint. The only changes were the inclusion of a second basis for why the

forbearances were unlawful – lack of written consent – and the insertion of Plaintiffs' original damages claim into the definition. These modifications allowed the class to be more readily ascertainable, and to eschew any issues of individualized proof. Based on the results of Search Query 1, the modifications served their purpose well. Courts have routinely held that plaintiffs may modify their class definition to arrive at a workable definition. *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 611 (D.N.M. 2017) ("A plaintiff is not bound to the class definition in the operative complaint . . . class actions are hard work for the Court and the parties; the Court and the parties need to conform the pleadings to the reality of discovery . . ."); *Murphy v. Gospel for Asia, Inc.*, 327 F.R.D. 227, 234 (W.D. Ark.) ("Holding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action, particularly in the formation of a workable class definition.") (citing *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004); *Weitzner v. Sanofi Pasteur, Inc.*, 3:11-CV-02198, 2017 WL 3894888, at *9 (M.D. Pa. Sept. 6, 2017), aff'd, 909 F.3d 604 (3d Cir. 2018) ("Courts have allowed Plaintiffs to substantially modify proposed class definitions initially set forth in their Complaint throughout the course of litigation."); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 92 n.2 (W.D. Mo. 1997); ("A court is not bound by the class definition proposed in the complaint."); (citing *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Courts have even permitted Plaintiffs to modify their class definition *after* moving for class certification. *Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 215 (E.D. Pa. 2010), aff'd, 655 F.3d 255 (3d Cir. 2011) ("In their Reply Brief, the Plaintiffs substantially modified the proposed class definitions initially set forth in their Complaint. Sensibly, modification of a class definition is

contemplated by the Federal Rules of Civil Procedure, and a court is not bound by the class definition proposed in the complaint.").

Additionally, when a Plaintiff timely serves a modified definition on the Defendant, which does not result in prejudice, the modification should be permitted. *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 at *10 (N.D. Ill. Jan. 4, 2013) ("The Plaintiff's change of class definition will not forestall the Court's class certification inquiry" because the Defendant "has had ample time to respond to the modified proposed class" and "was not prejudiced by the timing of the change."); *Weitzner v. Sanofi Pasteur, Inc.*, 3:11-CV-02198, 2017 WL 3894888, at *10 (M.D. Pa. Sept. 6, 2017), aff'd, 909 F.3d 604 (3d Cir. 2018) ("Since Defendants have failed to offer any concrete prejudice caused by the timing of the modification [to the class definition], this Court will not grant the Motion to Strike.").

Allowing the modified definition would not result in prejudice to Defendants. Nelnet received notice of the definition in February 2022, more than three months before Plaintiffs moved for class certification. Nelnet had not yet taken any depositions at that time, nor had it disclosed any expert witnesses. Because Nelnet is already in possession of Plaintiffs' complete loan portfolios, additional written discovery would not yield any new evidence. Moreover, the fact that Plaintiffs have claimed from the outset that the hardship forbearances violated 34 C.F.R. § 685.205(a), causing their accrued interest to be capitalized, forecloses Nelnet from arguing that there is any element of surprise.

### b. Because the modified definition does not expand the scope of liability, but rather narrows it, the modification should be allowed.

Defendants claim that the modified definition represents "an obvious expansion of the scope of the case, as framed by the original Complaint." (Def Brf. at 4). In fact, the modified definition *narrows* the class. Whereas the original definition included all borrowers whose IDR

12

plans were discontinued while their renewal applications were pending, the modified definition includes only a *subset* of these borrowers: those whose IDR plans were discontinued while their renewal applications were pending, *and* who were enrolled in a hardship forbearance within sixty days thereof. *Cf.* ECF 1, Compl., Page ID # 20, ¶ 81 *and* ECF 140, Page ID # 3036. Although this narrowing reduced the class size, Plaintiffs were willing to do so because it made class members more ascertainable, and it established that they had quantifiable damages. Because the modified definition does not expand the scope of recovery, it should be permitted.  *Labrier v. State Farm Fire & Cas. Co.*, 315 F.R.D. 503, 516 (W. D. Mo.) ("Holding [the plaintiff] to the plain language of the definition in the Complaint would be overly formalistic" because "the change to the definition in no way works a fundamental change to the issues and recovery sought.").

Defendants have created a Venn diagram that purports to show how vastly different the modified definition is from the original allegations. (Def. Brf. at 15). The diagram is misleading because it creates the impression that the modified definition was conjured from thin air. In fact, Plaintiffs have simply taken their allegations regarding damages, *which were already pleaded elsewhere in the complaint*, and inserted them into the class definition. This does not represent a "wholesale" change to Plaintiffs' theory, as Defendants claim. (Def. Brf. at 5). It amounts to a simple restructuring of the definition to better identify the class. Defendants were aware of this, and, for that reason, they did not dispute the overlap between the definitions for several months.

Now, however, Nelnet argues that the modified definition improperly expands the scope of the class. Even assuming *arguendo* that this were true, the appropriate remedy would not be to strike the definition altogether. The court could simply alter it, such as by synthesizing it with the original class, to ensure that the former is fully encompassed within the latter. *Bartle v. Td Ameritrade Holdings Corp.*, No. 20-00166-CV-W-BP, 2021 U.S. Dist. LEXIS 214158 * 24 (W.D.

Mo. Sep. 15, 2021) (holding that the "easy solution" to an overly-inclusive class was "to amend the class definition to include only customers who received a substitute payment in lieu of *qualified* dividends.") (emphasis in original); *In re Initial Public Offering Sec. Litig.*, 483 F.3d 70, 73 (2d Cir. 2006) ("Nothing precludes the [plaintiffs] from returning to the District Court to seek certification of a more modest class."). Plaintiffs do not suggest that any such modifications would be necessary at this point. They merely note that such alterations, when appropriate, are preferable to the relief sought by Nelnet.

### c. The modified definition does not rely on any factual averments that were not in the original complaint; it merely makes the class ascertainable.

Defendants do not argue that Plaintiffs' modified definition relies on any new factual averments. Their only objection is to the use of a "new theory of liability." (Def. Brf. at 4). What Nelnet advances is a "theory of the case" argument, also known as the theory-of-the-pleadings doctrine. However, this doctrine was abolished by the federal rules long ago. *Johnson v. City of Shelby,* 574 U.S. 10, 12 (2014) ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."); *Webb v. Hiykel*, 713 F.2d 405, 407 (8th Cir. 1983) ("It is well settled that the 'theory of the pleadings' doctrine has been effectively abolished under the Federal Rules of Civil Procedure".). This principle has not changed in the wake of the "plausibility" pleading requirements. *Hatmaker v. Memorial Medical Center*, 619 F.3d 741, 743 (7th Cir. 2010) ("Although *Twombly* and *Iqbal* require that a complaint in federal court allege facts sufficient to show that the case is plausible, they do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories.").

Courts have held that a finalized class definition need not be alleged in the complaint. *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015) ("A complaint must contain three

14

things: a statement of subject-matter jurisdiction, a claim for relief, and a demand for a remedy. Class definitions are not on that list. Instead, the obligation to define the class falls on the judge's shoulders under Fed. R. Civ. P. 23(c)(1)(B).") (emphasis added).

Nelnet's argument can be summarized as follows: Even though the modified definition and the original complaint both assert that Nelnet's use of hardship forbearances is unlawful because it violates *the same sentence* of 34 C.F.R. § 685.205(a), the modified definition is improper because it relies on *two* clauses of that sentence (emboldened below), whereas as the original complaint cites one clause (emboldened and underlined below):

> "The Secretary grants forbearance if the borrower or endorser intends to repay the loan but requests forbearance and **provides sufficient documentation to support this request**, and the Secretary determines that, <u>**due to poor health or other acceptable reasons**</u>, the borrower or endorser is currently unable to make scheduled payments." 34 C.F.R. 685.205(a).

This hyper-technical objection does not entitle Nelnet to the remedy it seeks. *Albert v. Carovano*, 851 F.2d 561, 571 n. 3 (2d Cir. 1988) (en banc) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–1078 (7th Cir.1992) ("Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."). It is irrelevant whether or not the complaint cites each and every relevant clause of the applicable regulation; the factual allegations put Nelnet on notice of Plaintiffs' claims.

### d.   The "law of the case" doctrine does not entitle Nelnet to the relief it seeks.

Nelnet argues that, under the "law of the case" doctrine, the Magistrate Judge's denial of Plaintiffs' motion to amend the complaint bars any use of the modified definition. (Def. Brf. at 17). However, the "law of the case" doctrine only applies to decisions made by appellate courts

15

and final decisions made by district courts. *First Union Nat'l Bank v. Pictet Overseas Trust Corp., Ltd.*, 477 F.3d 616, 620 (8th Cir. 2007). It does not apply to interlocutory orders, which "can always be reconsidered and modified by a district court prior to entry of a final judgment." *Id*.

Although the Magistrate Judge's order denied Plaintiffs' request to add new claims, it did not bar Plaintiffs from amending their class definition in a manner consistent with the original pleadings. Even if it did, such an order would have been interlocutory and not subject to the "law of the case" doctrine.

However, Plaintiffs dispute Nelnet's interpretation of the Magistrate Judge's order, which, according to Defendants, bars Plaintiffs from "redefin[ing] the putative class." (Def. Brf. at 17). Such an interpretation is inconsistent with Local Rule 72.1, which authorizes a Magistrate Judge to decide "pretrial procedural" issues. NECivR 72.1.  Accordingly, the Magistrate Judge's order resolved the narrow procedural issue of whether an amended complaint could supersede the original complaint. It did not reach the substantive issue of whether Plaintiffs' current class definition is grounded in the original pleadings. That is a question for the Court's "rigorous analysis" under Rule 23, which alone determines whether a class may be "redefine[d] in such a way as to allow the class action to be maintained." *In re Zurn Pex Plumbing Products Liab. Litig.*, 267 F.R.D. 549, 558 (D. Minn. 2010), aff'd, 644 F.3d 604 (8th Cir. 2011). *See also In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1261 (10th Cir. 2004) ("A trial court overseeing a class action retains the ability to monitor the appropriateness of class certification *throughout the proceedings* and to modify or decertify a class at any time before final judgment.") (emphasis added).

Plaintiffs' interpretation of the order is supported by the fact that the Magistrate Judge directed Nelnet to perform Plaintiffs' search queries for the express purpose of defining the class under the present complaint. (ECF 88, at 33:56. Plaintiffs complied with the Magistrate Judge's

orders by serving their finalized search query by the deadline set by the Court, and by abandoning all claims that relied on factual averments which were not set forth in the original complaint (*i.e.*, all claims based on Search Queries 2-4).

However, even assuming *arguendo* that Nelnet's interpretation of the Magistrate Judge's order is plausible – which Plaintiffs' strenuously deny – any previous determinations made by the Magistrate Judge remain subject to Rule 54, which allows a district court to "freely reconsider its prior rulings," and "puts no limit or governing standard on the district court's ability to do so, other than that it must do so before the entry of judgment." *Abraham v. WPX Energy Prod., LLC*, 322 F.R.D. 592, 594 (D.N.M. 2017). *See also United States ex rel. Kuriyan v. HCSC Ins. Services Co.*, CIV 16-1148 JB/KK, 2021 WL 5998603, at *39 (D.N.M. Dec. 20, 2021) ("The judge-made law-of-the-case doctrine cannot displace rule 54(b).").

### e. Nelnet's motion to strike should not be permitted at this late stage of the proceedings because it would substantially prejudice Plaintiffs' case.

Nelnet's motion should be denied because it would cause substantial prejudice to Plaintiffs at this late stage. Since February 2022, Nelnet knew that Search Query 1 was intended to serve as a finalized class definition. (ECF 88, at 10:15, 13:49). Defendants represented to the Court that they would execute the query if it was feasible and not based on "radical changes" to Plaintiffs' theories. (*Id.* at 33:04). Based on this understanding, Nelnet agreed to execute Search Query 1, but it objected to running Search Queries 2-4 prematurely because they were contingent on Plaintiffs' motion to add new claims. (ECF 158, at Page ID # 3772 and ECF 159, at Page ID # 3785). Now, Nelnet now seeks to reverse its position, claiming that the modified definition based on Search Query 1 represents a "wholesale change" to Plaintiffs' theory of liability, which has "virtually no overlap" with the original complaint. (Def. Brf. at 5). Defendants' inconsistent claims reveal that their argument lacks merit.

17

Because of the untimeliness of Nelnet's objection, striking the class definition at this late stage would substantially prejudice Plaintiffs' case. Nelnet raised its first objection to the class definition four months after it was served on Defendants; three months after Plaintiffs waived their right to introduce expert testimony regarding the search queries; and two weeks after Plaintiffs moved for class certification.

During the January 25, 2022 hearing, the Court ordered that, if Defendants wished to raise any issues relating to the search query, they should "bring it to [the Court's] attention." (ECF 88, at 35:00).   If Nelnet had timely objected in February 2022, when Search Query 1 was first propounded, Plaintiffs could have sought a judicial determination as to whether the query was within the scope of the original complaint, or, in the alternative, proffered different search queries. Because Nelnet did not do so, Plaintiffs built their entire case around Search Query 1. Nelnet had ample time to object to the definition prior to Plaintiffs' moving for certification; they should not be permitted to do so now. *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277, at *10 (N.D. Ill. Jan. 4, 2013) (holding that the "Defendant has had ample time to respond to the modified proposed class" and "is not prejudiced by the timing of the change.").

### f.   Nelnet's argument relies on case law that is inapposite.

Nelnet's motion relies on cases that do not support its motion. For instance, Defendants cite *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-cv-7995, 2013 U.S. Dist. LEXIS 1277 (N.D. Ill. Jan. 4, 2013) for the proposition that "courts typically, though not invariably, hold a plaintiff seeking class certification to the definition espoused in the relevant complaint." (Def. Brf. at 10). However, *Savanna Grp.* reached the opposite conclusion, holding that "the Plaintiff's change of class definition will not forestall the Court's class certification inquiry" because the Defendant "had ample time to respond to the modified proposed class." *Id*. at *10.

18

Nelnet also cites *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 (9th Cir. 2016) to argue that "Plaintiffs cannot recast their claims without properly amending their Complaint." (Def. Brf. at 16). The *Ruiz* court made no such holding. In that case, the Defendant argued that the class definition was "drawn too broadly," and the court held that, rather than "call into question the validity of the class as a whole, the better course is not to deny class certification entirely, but to *amend the class definition as needed* to correct for the overbreadth."). *Id.* at 1139 (emphasis added). Nowhere was it suggested that amending the complaint was necessary.

Indeed, courts have held otherwise. *Weisfeld v. Sun Chem. Corp.*, 84 F. App'x. 257, 259 (3d Cir. 2004) ("Despite failing to revise his complaint, [the plaintiff] sought to narrow the definition of the class in his motion for class certification. The District Court considered this revised class definition in its analysis, and we will do the same."); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("The judge may ask for the parties' help [in defining the class], but motions practice and a decision under Rule 23 do not require the plaintiff to amend the complaint.").

Nelnet also relies on a series of cases to argue that Plaintiffs may not use a class definition to expand upon the relief sought in their complaint. (Def. Brf. at 10, citing *Klein v. TD Ameritrade Holding Corp.*, No. 8:14CV396, 2018 U.S. Dist. LEXIS 157501, at *20 (D. Neb. July 12, 2018)); (Def. Brf. at 10, citing *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-MD-2090 ADM/TNL, 2016 U.S. Dist. LEXIS 121006, (D. Minn. Sep. 7, 2016)); (Def. Brf. at 11, citing *Hays v. Nissan N. Am.*, No. 4:17-CV-00353-BCW, 2019 U.S. Dist. LEXIS 240713 (W.D. Mo. Sep. 16, 2019)); (Def. Brf. at 11, citing *Smith v. SEECO, Inc.*, No. 4:15CV00147 BSM, 2016 U.S. Dist. LEXIS 90387, at (E.D. Ark. Mar. 11, 2016)); (Def. Brf. at 16, citing *Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)). These cases are inapplicable because Plaintiffs have not sought to

expand the class; they have *narrowed* it by using more objective criteria. Their claims still rely on the same federal regulation, the same state laws, the same contractual provisions, and the same form of monetary damages.

Moreover, the aforementioned cases were inapposite on other grounds. In *Hays v. Nissan N. Am.*, the Plaintiff sought to expand his class definition to make it more inclusive, and the court granted leave to do so because there was no prejudice to the Defendant. *Id*. at *4. Similarly, in *Sandoval v. Ali*, the court held that the class definition was "overbroad" because it included persons who were "not the focus of Plaintiffs' allegations," but the court granted leave to amend the definition accordingly. *Id*. at 1044. In neither case did the court allow the extreme measure of striking the class definition, which Defendants now seek.

Nelnet cites other cases in which a modified class definition was not allowed because it would have resulted in prejudice to the Defendant. For instance, in *Smith v. SEECO, Inc.*, the plaintiffs were not permitted to broaden their class definition because (1) Defendants' experts had already issued reports based on the original class definition; and (2) new depositions would have been required. *Id*. at *11-12. In *Clarke v. Baptist Mem'l Healthcare Corp.*, 264 F.R.D. 375, 381 (W.D. Tenn. 2009), the Plaintiffs' first motion for class certification was denied, at which point they proposed a modified definition involving a third-party intervenor. The court held that the new definition would unfairly prejudice the Defendant because it would require extensive discovery from the new party, and new expert reports would be needed. *Id*. at 380-381.

These cases bear no resemblance to the present facts. Nelnet had not conducted any oral or expert discovery prior to receiving the modified class definition, and no further written discovery would be necessitated by the modification because Nelnet already has Plaintiffs' complete loan portfolios.

Defendants also rely on *Alvarez v. Office Depot, Inc.*, No. CV 17-7220 PSG (AFMx), 2019 U.S. Dist. LEXIS 109974 (C.D. Cal. June 27, 2019) (Def. Brf. at 12-13). In that case, a modified class definition was not permitted because there were "no factual allegations" in the complaint that related to the modified definition. *Id*. at *15. By contrast, in the instant case, the modified definition is squarely based on the complaint's allegation that Nelnet "improperly placed the loans of countless borrowers into hardship forbearance during the IDR recertification process, causing unpaid accrued interest to be capitalized, or added to the borrower's principal loan balance." (ECF 1, Compl., Page ID # 3, ¶ 8). Nelnet does not even claim that the complaint is deficient in terms of factual allegations; its only objection is to an allegedly new *legal* theory (which, in fact, is not new at all).

Nelnet also relies on cases in which the plaintiff sought a novel form of damages in the motion for certification. For instance, in *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546 (C.D. Cal. 2011), the Plaintiff's motion for certification sought injunctive relief that was not requested in the complaint. *Id.* at 560. The court held that the plaintiff could not seek such a remedy for the first time when moving to certify the class. *Id.* Similarly, in *Junod v. NWP Servs. Co.*, No. 8:14-cv-1734-JLS (JCGx), 2016 U.S. Dist. LEXIS 195195 (C.D. Cal. July 18, 2016), a modified class definition was deemed improper because it proposed a completely novel theory of damages. *Id*. at *12. Unlike these cases, Plaintiffs' have alleged the very same form of monetary damages from the beginning (improper interest capitalizations), and they have invoked the same laws and contractual provisions throughout this litigation to serve as the basis for this argument. The case law cited by Nelnet does not support its motion.

## VI.    CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court deny Defendants' Joint

Motion to Strike Plaintiffs' Class Action Allegations and Motion for Class Certification.

Respectfully submitted,

*s/ Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman                               Anthony Fiorentino
Cassandra P. Miller                             **FIORENTINO LAW OFFICES, LTD**.
**EDELMAN, COMBS, LATTURNER**        432 N Clark St, #202
**& GOODWIN, LLC**                  Chicago, IL 60654
20 S. Clark Street, Suite 1500                  Tel.: (312) 853-0050
Chicago, Illinois 60603                         Fax: (312) 853-3254
(312) 739-4200                                  anthony@fiorentinolaw.com
(312) 419-0379 (FAX)
dedelman@edcombs.com
cmiller@edcombs.com

David A. Domina
**DOMINA LAW GROUP PC LLO**
2425 South 144th Street
Omaha, NE 68144
Tel.: (402) 493-4100
Fax: (402) 493-9782
DAD@dominalaw.com

22

## CERTIFICATE OF SERVICE

I, Cassandra P. Miller, certify that on June 10, 2022, I caused a true and accurate copy of the foregoing document to be filed via the courts CM/ECF online system, which sent notice via email to all counsel of record.

*s/Cassandra P. Miller*
Cassandra P. Miller

Daniel A. Edelman
Cassandra P. Miller
**EDELMAN, COMBS, LATTURNER**
**& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com